UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JIMMIE E.,

          Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

20-CV-0406-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 17)

Plaintiff Jimmie E.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 12) is granted, defendant's motion (Dkt. No. 15) is denied and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND

Plaintiff applied for SSI in November, 2018, due to depression, ADHD, non-Hodgkin lymphoma, and anxiety. (Tr. 57, 187-98, 212)[2] The state agency denied the application and plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 57-91, 110-21, 124-26) In October, 2019, plaintiff appeared and testified at the administrative hearing with an attorney representative. (Tr. 30-56) On December 20, 2019, ALJ Timothy McGuan issued a decision finding plaintiff not disabled since the application date of November 5, 2018. (Tr. 10-19) On February 5, 2020, the Appeals Council denied plaintiff's request for review. (Tr. 1-4) This action followed. (Dkt. No. 1)

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record,

---

[2] References to "Tr." are to the administrative record in this case. (Dkt. No. 11)

2

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the

claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date of November 5, 2018. (Tr. 12) At step two, the ALJ found that plaintiff had the severe impairments of anxiety, depression, bipolar disorder, ADHD, and cannabis abuse; and the non-severe impairments of lymphoma and right knee impairment. (Tr. 12-13) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 13-14) Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform medium work with the following limitations: can lift or carry 25 pounds occasionally; sit for up to one hour at a time, stand and walk for up to one hour at a time, needs a sit/stand option after one hour and can alternate that position for eight hours in an eight-hour day; cannot interact with the public, can have occasional interaction with coworkers and supervisors; and can perform simple, unskilled work. (Tr. 14) Proceeding to step four, the ALJ concluded that plaintiff had no past relevant work. (Tr. 17) At step five, the ALJ found that plaintiff could perform the representative jobs of mail clerk, office helper, and hand packer. (Tr. 18) Accordingly, the ALJ found that plaintiff was not disabled under the Act. (Tr. 18-19)

IV. *Plaintiff's Challenges*

Plaintiff argues that that remand is required because the ALJ's mental RFC determination was inconsistent with the opinion evidence he found persuasive and because he failed to properly evaluate the opinion of plaintiff's treating social worker. (Dkt. No. 12-1 at 11-21)

6

For the reasons that follow, the Court agrees that remand is required.

Plaintiff was born in 1991 and was 27 years old when he filed his SSI application. (Tr. 187) He received special education services in school, obtained a GED, and had no work experience. (Tr. 33, 40) He alleged disability due to bipolar disorder, anxiety, depression, and ADHD, and had been diagnosed with lead poisoning as a child for which he received a monthly annuity. (Tr. 33, 212)

Plaintiff testified that lived with his service dog and his significant other. (Tr. 36) He said he could not work because he had anger management problems and would "flip out" around other people. (Tr. 35) He had been in and out of counseling since 2013, but stopped going in 2017 when his father and brother both passed away. (Tr. 36-39) Plaintiff had no treatment or medication between March, 2018, and August, 2019, because he did not like his counselor at the time. (Tr. 39)

Plaintiff testified to reading and comprehension problems. (Tr. 43-44) His boyfriend and his boyfriend's father grocery shopped for plaintiff because he was unable to manage money. (Tr. 44) Plaintiff had two physical altercations with others in 2016 and 2017 and was involved in "road rage" incident which resulted in a car accident. (Tr. 45-46, 49-50, 697)

The administrative record in this case contained several opinions that assessed plaintiff's mental impairments and limitations. On January 16, 2019, Dr. Agnes Jonas examined plaintiff and opined that he had moderate to marked limitation in understanding, remembering, and applying complex directions and instructions; moderate to marked limitation in using reason and judgment to make work-related decisions; moderate limitation in interacting adequately with supervisors, coworkers, and the public; moderate

to marked limitation in sustaining concentration and performing a task at a consistent pace; moderate limitation in regulating emotion, controlling behavior, and maintaining well-being; mild to moderate limitation in maintaining personal hygiene and appropriate attire; and mild limitation in being aware of normal hazards and taking appropriate precautions. (Tr. 622) Dr. Jonas found the difficulties were caused by cognitive deficits, emotional dysregulation, and poor judgment. (Tr. 622) His prognosis was guarded "since he never worked and his social skills are poor." (Tr. 623)

On February 1, 2019, non-examining State agency review physician H. Tzetzo reviewed the record and opined that plaintiff was capable of "simple work tasks – involving mainly brief and superficial contact with supervisors, coworkers and the public." (Tr. 64-65)

On March 14, 2019, non-examining State agency review physician T. Bruni reviewed the record and also opined plaintiff was capable of "simple work tasks – involving mainly brief and superficial contact with supervisors, coworkers and the public." (Tr. 82)

A September, 2019, functional assessment provided by plaintiff's most recent social worker, Ellen Krebs, LMSW, stated that plaintiff's clinical findings included impulsivity, anxiety, erratic behaviors, physically aggressive behaviors, self-harming behaviors, and emotional lability. (Tr. 658) She opined that plaintiff had no useful ability to function with respect to sustaining an ordinary routine without special supervision, working in coordination with proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically based symptoms, and carrying out detailed instructions. (Tr. 660-661) Ms. Krebs also

opined that plaintiff was unable to meet competitive standards with respect to remembering work-like procedures, maintaining attention for two hour segments, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, understanding and remembering detailed instructions, setting realistic goals or making plans independently of others, and dealing with stress or semiskilled and skilled work. (Tr. 660-661)

Ms. Krebs found, "Jimmie's symptoms of impulsivity, anxiety, distract[ibility] would prevent him from completing a normal workday, his history of aggressive, [physically] injurious behaviors would prevent him from working with or in close proximity to others." (Tr. 660) She also explained that, "Jimmie's anxiety and distract[ibility] interferes with his ability to focus, concentrate on verbal or written instructions. He had demonstrated an inability to set goals or plan activities independent of others." (Tr. 661) Additionally, "Jimmie exhibits a lack of interpersonal skills become easily provoked + responds to stressors in socially unacceptable ways." (Tr. 661) Plaintiff would be absent more than four days per month as a result of his impairments or treatment. (Tr. 662) Ms. Krebs concluded that he could not engage in full-time competitive employment on a sustained basis. (Tr. 662)

In evaluating the opinion evidence, the ALJ found Dr. Jonas's opinion "persuasive as to the areas of limitation identified, but the opinion is vague as to the intensity of those limitations," because "the terms 'mild, moderate, and marked' have little meaning in assessing the frequency with which the claimant can engage in activities." (Tr. 17) The

9

ALJ then found that the State agency review opinions were "persuasive as they are consistent with and supported by the treatment record." (Tr. 17) The ALJ found Ms. Krebs' assessment "not persuasive" because she issued her report only one month after beginning counseling with plaintiff on a biweekly basis. (Tr. 17)

As stated earlier, the ALJ's mental RFC finding included limitations of no public interaction, limited interaction with coworkers and supervisors, and performing simple, unskilled work. (Tr. 14) The RFC did not address or incorporate the moderate or moderate to marked limitations assessed by Dr. Jonas.

Dr. Jonas opined, among other things, that plaintiff had moderate to marked limitation in using reason and judgment to make work-related decisions, moderate to marked limitation in sustaining concentration and performing a task at a consistent pace, and moderate limitation in regulating emotion, controlling behavior and maintaining well-being. (Tr. 622) Yet the ALJ did not include any of these limitations in the RFC determination despite concluding the areas of limitation identified by Dr. Jonas were persuasive. (Tr. 17, 622) Additionally, the vocational expert testified that an employer typically did not tolerate more than 10% off task time, that physical altercations at the workplace were grounds for immediate termination, and that an individual would be terminated if verbal altercations occurred after a warning was given for the first instance. (Tr. 55-56) This testimony suggests Dr. Jonas' opined limitations regarding plaintiff's ability to use reason and judgment to make work-related decisions, sustain concentration, perform a task at a consistent pace, regulate emotion, control behavior and maintain well-being, could be work-preclusive.

The Commissioner argues that the ALJ's "limitation to simple, unskilled work accounted for the doctor's opinions of moderate to marked limitations in using reason and judgment to make work-related decisions and sustaining concentration and performing a task at a consistent pace." (Dkt. 15-1 at 10-11) While the Court acknowledges that moderate to marked limitations can be consistent with a capacity to perform unskilled work, *see DelCarmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at \*9 (S.D.N.Y. Feb. 19, 2019), the ALJ here did not provide an explanation or discuss *how* the assessed limitations impacted plaintiff's ability to perform simple, unskilled work. This error warrants remand. *See Reynolds v. Colvin*, No. 13-CV-396, 2014 WL 4184729, at \*5 (N.D.N.Y. Aug. 21, 2014) ("'[M]oderate' inevitably contemplates some diminishment in capacity for work. And, if the term is suitable for use in residual functional capacity assessments, it surely must connote something susceptible to objective correlation. Given the additional evidence adduced by Reynolds through cross examination of VE Sypher that a person with 10% inability to meet mental demands of ordinary work is unemployable, it was incumbent on ALJ Gale to articulate a plausible reason or explanation as to why Reynolds's moderate mental limitations do not rise to that level.") *accord Pamela P. v. Saul*, No. 19-CV-575, 2020 WL 2561106, at \*6 (N.D.N.Y. May 20, 2020); *see also Williams v. Comm'r of Soc. Sec.*, No. 18-CV-1027, 2020 WL 4904947, at \*6 (W.D.N.Y. Aug. 20, 2020) ("While the Court recognizes that moderate limitations in work-related functions do not necessarily prevent a claimant from performing unskilled simple and repetitive tasks, . . . the [ALJ] erred here because he failed to explain how Plaintiff was able to perform simple, routine tasks or unskilled work despite his difficulties in completing a normal workday, accepting instructions, responding to criticism, and

11

working in coordination and proximity with others identified by Dr. Bruno.") (citation omitted); Stellmaszyk v. Berryhill, No. 16cv09609, 2018 WL 4997515, at *28 (S.D.N.Y. Sept. 28, 2018) (remand was warranted when it was unclear how the ALJ incorporated plaintiff's moderate limitations in concentration, attention, and keeping to a schedule into account restricting plaintiff to simple low stress work with occasional interaction with others). The Court therefore rejects defendant's argument that the RFC properly incorporated the assessed limitations.

To the extent that the ALJ rejected Dr. Jonas' assessed limitations as "vague" with respect to the intensity of those limitations, see Tr. 17, the ALJ should have recontacted Dr. Jonas for clarification or to complete a supplemental functional assessment. See Williams, 2020 WL 4904947, at *6) (finding remand was required for clarification of the impact of moderate mental limitations opined by the State agency medical consultant on the plaintiff's capacity to work on a sustained basis); Stellmaszyk, 2018 WL 4997515, at *24 (finding the ALJ should have recontacted the consultative examiner after finding the opined limitations were vague). For these reasons, remand is appropriate.

Because the Court has determined that remand is warranted on this basis, it need not reach plaintiff's remaining argument.

## CONCLUSION

For the foregoing reasons, plaintiff Jimmie E's motion for judgment on the pleadings (Dkt. No. 12) is granted, defendant Commissioner of Social Security's motion for judgment on the pleadings (Dkt. No. 15) is denied, and the matter is remanded to the

Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: June 10, 2021
Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge